# CLEARY GOTTLIEB STEEN & HAMILTON LLP

ONE LIBERTY PLAZA
NEW YORK, NY 10006-1470

(212) 225-2000

FACSIMILE (212) 225-3999

WWW.CLEARYGOTTLIEB.COM

WASHINGTON, DC · PARIS · BRUSSELS · LONDON · MOSCOW
FRANKFURT · COLOGNE · ROME · MILAN · HONG KONG
BEIJING · BUENOS AIRES · SÃO PAULO · ABU DHABI · SEOUL

Writer's Direct Dial: +1 212 225 2508
E-Mail: cboccuzzi@cgsh.com

LAURENT ALPERT
VICTOR I. LEWKOW
LESLIE N. SILVERMAN
ROBERT L. TORTORIELLO
LEE C. BUCHHEIT
JAMES M. PEASLEE
THOMAS J. MOLONEY
DAVID G. SABEL
JONATHAN I. BLACKMAN
MICHAEL L. RYAN
ROBERT P. DAVIS
YARON Z. REICH
RICHARD S. LINCER
STEVEN G. HOROWITZ
JAMES A. DUNCAN
STEVEN L. LOEB
CRAIG B. BROD
MITCHELL A. LOWENTHAL
EDWARD J. ROSEN
LAWRENCE B. FRIEDMAN
NICOLAS GRABAR
CHRISTOPHER E. AUSTIN
SETH GROSSHANDLER
WILLIAM A. GROLL
HOWARD S. ZELBO
DAVID E. BRODSKY
ARTHUR H. KOHN
RICHARD J. COOPER
JEFFREY S. LEWIS
PAUL J. SHIM
STEVEN L. WILNER
ERIKA W. NIJENHUIS
LINDSEE P. GRANFIELD
ANDRES DE LA CRUZ
DAVID C. LOPEZ
CARMEN A. CORRALES
JAMES L. BROMLEY
MICHAEL A. GERSTENZANG
LEWIS J. LIMAN

LEV L. DASSIN
NEIL Q. WHORISKEY
JORGE U. JUANTORENA
MICHAEL D. WEINBERGER
DAVID LEINWAND
DIANA L. WOLLMAN
JEFFREY A. ROSENTHAL
ETHAN A. KLINGSBERG
MICHAEL J. VOLKOVITSCH
MICHAEL D. DAYAN
CARMINE D. BOCCUZZI, JR
JEFFREY D. KARPF
KIMBERLY BROWN BLACKLOW
ROBERT J. RAYMOND
SUNG K. KANG
LEONARD C. JACOBY
SANDRA L. FLOW
FRANCISCO L. CESTERO
FRANCESCA L. ODELL
WILLIAM L. MCRAE
JASON FACTOR
MARGARET S. PEPONIS
LISA M. SCHWEITZER
JUAN G. GIRALDEZ
DUANE MCLAUGHLIN
BREON S. PEACE
MEREDITH E. KOTLER
CHANTAL E. KORDULA
BENET J. O'REILLY
DAVID AMAN
ADAM E. FLEISHER
SEAN A. O'NEAL
GLENN P. MCGRORY
MATTHEW P. SALERNO
MICHALL J. ALBANO
VICTOR L. HOU
ROGER A. COOPER
AMY R. SHAPIRO
JENNIFER KENNEDY PARK

ELIZABETH LENAS
LUKE A. BAREFOOT
PAMELA L. MARCOGLIESE
PAUL M. TIGER
JONATHAN S. KOLODNER
DANIEL ILAN
MEYER H. FEDIDA
ADRIAN R. LEIPSIC
ELIZABETH VICENS
ADAM BRENNEMAN
ARI D. MACKINNON
JAMES E. LANGSTON
RESIDENT PARTNERS

SANDRA M. ROCKS
S. DOUGLAS BORISKY
JUDITH KASSEL
DAVID E. WEBB
PENELOPE L. CHRISTOPHOROU
BOAZ S. MORAG
MARY E. ALCOCK
DAVID H. HERRINGTON
HEIDE H. ILGENFRITZ
HUGH C. CONROY, JR
KATHLEEN H. EMBERGER
WALLACE L. LARSON, JR
AVRAM E. LUFT
ANDREW WEAVER
HELENA K. GRANNIS
GRANT M. BINDER
JOHN V. HARRISON
CAROLINE F. HAYDAY
DAVID FLECHNER
RESIDENT COUNSEL

LOUISE M. PARENT
OF COUNSEL

September 24, 2015

BY ECF

The Honorable Thomas P. Griesa
U.S. District Court for the Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street - Room 1630
New York, New York 10007

> Re: *Seijas v. Republic of Argentina*, No. 04-cv-400 (TPG)
> *Seijas v. Republic of Argentina*, No. 04-cv-401 (TPG)
> *Castro v. Republic of Argentina*, No. 04-cv-506 (TPG)
> *Hickory Securities, Ltd. v. Republic of Argentina*, No. 04-cv-936 (TPG)
> *Valls v. Republic of Argentina*, No. 04-cv-937 (TPG)
> *Azza v. Republic of Argentina*, No. 04-cv-1085 (TPG)
> *Puricelli v. Republic of Argentina*, No. 04-cv-2117 (TPG)
> *Chorny v. Republic of Argentina*, No. 04-cv-2118 (TPG)

Dear Judge Griesa:

I write pursuant to the Court's Orders of August 25, 2015 and September 2, 2015,

directing the parties in the above-captioned cases to set forth their respective views concerning

"the matters identified in items (1) through (4) at page nine" of the Second Circuit's decision in

Hon. Thomas P. Griesa, p. 2

*Puricelli v. Republic of Argentina*, No. 14-2104, 2015 WL 4716474 (2d Cir. Aug. 10, 2015) ("*Seijas III*").

In *Seijas III*, the Court of Appeals remanded these cases with directions to follow the "specific instructions" in *Hickory Securities Ltd. v. Republic of Argentina*, 493 F. App'x 156 (2d Cir. 2012) (summary order) ("*Seijas II*"). Those instructions, as set out in *Seijas II* and *Seijas III*, are to

> (1) consider evidence with respect to the volume of bonds purchased in the secondary market after the start of the class periods that were not tendered in the debt exchange offers or are currently held by opt-out parties or litigants in other proceedings;
>
> (2) make findings as to a reasonably accurate, non-speculative estimate of that volume based on the evidence provided by the parties; [and]
>
> (3) account for such volume in any subsequent damage calculation such that an aggregate damage award would 'roughly reflect' the loss to each class.

*Seijas III*, 2015 WL 4716474 at *2; *Seijas II*, 493 F. App'x at 160.[1]

The Second Circuit further instructed that (4) if no "reasonably accurate, non-speculative estimate" of aggregate damages could be made, then the Court should "determine how to proceed with awarding damages on an individual basis." *Id*; *see also id*. ("Ultimately, if an aggregate approach cannot produce a reasonable approximation of the actual loss, the district court must adopt an individualized approach."). The purpose of these instructions was to permit the parties and the Court to calculate damages so as to distinguish between continuous holders of

---

[1] The Second Circuit recently vacated the class modification Order entered in a related case, *Brecher v. Republic of Argentina*, No. 06 Civ. 15297(TPG), and remanded with these same instructions. *Brecher v. Republic of Argentina*, No. 14-4385, 2015 WL 543879, at *3 (2d Cir. Sept. 16, 2015).

Hon. Thomas P. Griesa, p. 3

interests in Republic bonds, who satisfy the class definition, and holders who purchased their interests in the secondary market after the class complaints were filed in 2004.  *Id.* (vacating plaintiffs' aggregate judgments because they did not account for "the volume of bonds purchased in the secondary market after 2004 that were not tendered or are currently held by opt-outs or other litigants.").

       The first question before the Court on remand is thus whether it is possible to account for secondary trading such that "reasonably-accurate, non-speculative" aggregate judgments may be entered in these cases.  After the Second Circuit's remand in *Seijas II*, the Republic and plaintiffs exchanged discovery – including document productions by both parties – confirming that neither party had documents showing the amount of trading in class bonds. Plaintiffs then concluded that "to get the evidence that the Second Circuit requires, [they] would be forced to engage in extremely burdensome, time-consuming and difficult third-party discovery in the U.S. and abroad," Memorandum of Law, *Seijas v. Republic of Argentina*, No. 04 Civ. 400(TPG) (S.D.N.Y. Sept. 12, 2013), which would be "rife with legal and practical pitfalls," *id. See also* Hr'g Tr. 26:2-5, *Puricelli v. Republic of Argentina*, No. 14-2104 (2d Cir. June 17, 2015) (plaintiffs' counsel stating that relevant information "could only be gleamed [sic] through voluminous burdensome third-party discovery including discovery into individual accounts outside of the United States.") (Ex. A).

       The Republic agrees with plaintiffs that determining class holdings will turn on third party discovery and may be unwieldy and prone to error.  For example, it is not enough for plaintiffs to calculate how much aggregate trading there has been since the class complaints were filed; plaintiffs must also present evidence showing whether trades in the secondary market were

Hon. Thomas P. Griesa, p. 4

made by individuals or entities who were continuous holders up to the time of those trades, which will require tracing particular interests in fungible series of bonds from transaction to transaction.

If, notwithstanding these difficulties, plaintiffs now wish to take third-party discovery and make a final attempt to reasonably estimate aggregate damages, the Republic respectfully suggests that the Court enter a scheduling order consistent with proceedings generally used to calculate class damages. The Republic suggests a period during which the parties may take third-party discovery, followed by an interval for expert discovery, including deadlines for the exchange of expert reports and taking of expert depositions, as well as *Daubert* briefing, if any.[2]

After fact and expert discovery, if plaintiffs have not carried their burden on aggregate damages,[3] then *Seijas III* requires them to proceed with establishing damages on an individual basis. *Seijas III*, 2015 WL 4716474, at *4. The Court recognized at the outset of these cases that judgments must be calculated based on individual class members presenting proof of their claims, noting in denying plaintiffs' initial motions for summary judgment that

> plaintiffs have not only failed to provide ownership, but they have not even identified class members who might do so, other than the lead plaintiffs. . . . Surely, when the classes in these actions are well-defined,

---

[2] If the Court endorses this approach, counsel for the Republic and plaintiffs could meet and confer as to the form of such an order.

[3] Plaintiffs, of course, bear the burden of proving damages. *Arch Ins. Co. v. Precision Stone, Inc.*, 584 F.3d 33, 40 (2d Cir. 2009) ("It is fundamental to the [New York] law of damages that one complaining of injury has the burden of proving the extent of the harm suffered.") (quoting *Berley Indus., Inc. v. City of New York*, 45 N.Y. 2d 683, 686 (1978)); *Trademark Research Corp. v. Maxwell Online, Inc.*, 995 F.2d 326, 334 (2d Cir. 1993) (party alleging breach of contract has burden of proving damages).

Hon. Thomas P. Griesa, p. 5

> eligible plaintiffs should submit summary judgment motions with
> documentation of their bond ownership, and where that documentation is
> sufficient, summary judgment will be granted.

Order Denying Motions for Summary Judgment at 4, *Seijas v. Republic of Argentina*, No. 04

Civ. 401 (TPG) (S.D.N.Y. Feb. 15, 2006); *accord H.W. Urban GmbH v. Republic of Argentina*,

No. 02 Civ. 5699(TPG), 2004 WL 307293, at *3 (S.D.N.Y. Feb. 17, 2004) (the Court has

discretion to "require class members to come forward affirmatively and 'present claims.' . . .

[T]he need to do this . . . is obvious because no judgment can be rendered without the

presentation of such claims.").

Plaintiffs themselves agree that individual plaintiffs must come forward and

present proof of ownership in order to collect on any judgment, and, indeed, it could not be

otherwise.  *See* Hr'g Tr. 32:5-11, *Puricelli v. Republic of Argentina*, No. 14-2104 (2d Cir. June

17, 2015) (plaintiffs' counsel noting that individual holders purporting to be members of a class

will need to present claims) (Ex. A); Michael Adler Dep. Tr. at 84:17-18, dated Oct. 13, 2010 (to

calculate amount of continuously held bond interests, "[y]ou have to ask the people how much

they own.") (Ex. B).  Thus, the only question remaining is *when* individuals plaintiffs must

present proof of ownership; there is no reason why that process cannot take place before

judgment instead of afterwards, and under the Second Circuit's rulings, that is when it *must* take

place if plaintiffs cannot satisfy their burden of proving non-speculative, aggregate damages to

Hon. Thomas P. Griesa, p. 6

continuous holders after accounting for all secondary market trading since the commencement of these actions.

Respectfully submitted,

Carmine D. Boccuzzi

cc:    Counsel of Record (by ECF)

Attachments

# Exhibit A

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

------------------------X

IN THE MATTER OF:

    EDUARDO PURICELLI, ET AL.,

                  Plaintiffs,

                                  Index No.:
                                  14-2104 (L)

                  Vs.

    THE REPUBLIC OF ARGENTINA,

                  Defendant.

------------------------X

                  June 17, 2015

HELD AT:            DANIEL PATRICK MOYNIHAN
                    UNITED STATES COURTHOUSE
                    500 Pearl Street
                    New York, NY 10007

BEFORE:             HONORABLE PIERRE N. LEVAL
                    HONORABLE CHESTER J. STRAUB
                    HONORABLE REENA RAGGI
                    Judges

APPEARANCES:        CARMINE D. BOCCUZZI JR., ESQ.
                    CLEARY GOTTLIEB STEEN & HAMILTON LLP

                    JENNIFER SCULLION, ESQ.
                    PROSKAUER ROSE LLP

TRANSCRIBERS:       DEANA M. SMITH
                    LYNN M. REINHARDT

I N D E X

W I T N E S S E S

| PETITIONER:<br>WITNESS | DIRECT | CROSS | RE<br>DIRECT | RE<br>CROSS | V.<br>D. | J |
|---|---|---|---|---|---|---|

| RESPONDENT:<br>WITNESS | DIRECT | CROSS | RE<br>DIRECT | RE<br>CROSS | V.<br>D. | J |
|---|---|---|---|---|---|---|

E X H I B I T S

| PETITIONER:<br>IDENTIFICATION | DESCRIPTION | I.D. | IN EV. |
|---|---|---|---|

| RESPONDENT:<br>IDENTIFICATION | DESCRIPTION | I.D. | IN EV. |
|---|---|---|---|

**Ubiqus/Nation-Wide Reporting & Convention Coverage**
22 Cortlandt Street – Suite 802, New York, NY 10007
Phone: 212-346-6666 * Fax: 888-412-3655

1              JUDGE REENA RAGGI:  We'll hear next from the

2     parties in Puricelli v. Argentina.  Mr. Boccuzzi,

3     please.

4              MR. CARMINE BOCCUZZI:  Thank you Your Honor.

5     May it please the Court?  Carmine Boccuzzi from Cleary

6     Gottlieb on behalf of the Appellant, the Republic of

7     Argentina.  The District Court committed legal error

8     when it did not follow this Court's mandated

9     instruction in the Hickory Securities case which in

10    the briefs we refer to as SAOS2 [phonetic].  SAOS2 was

11    the second time this Court had vacated so-called

12    aggregate judgments and in SAOS2, the Court—this Court

13    sent back to the District Court the question of

14    determining the secondary trading in the market in

15    these bonds that needs to be taken into account in

16    order for the District Court to determine a reasonably

17    accurate aggregate judgment. And if it could not do

18    so, then to proceed with damages on an individualized

19    basis.

20             JUDGE LEVAL:  The problem—the problem that

21    led to what our Court said in the SAOS2 case was the

22    inability of the method used by the District Court to

23    fix the judgment to match with the definition of the

24    class.  Now the District Court made, what seems to me,

25    a reasonable assumption that that problem was

1       eliminated by changing the definition of the class.

2       Now, we could, if we accepted your argument, we could

3       say, "Well the District Court wasn't allowed to

4       deviate from that mandate unless we permitted it." And

5       we could then say, "All right, we allow you to do this

6       District Court." Go back to the District Court, the

7       District Court will do it again, and then you'll be

8       back here tomorrow.  But wouldn't that just be running

9       around the block for no, for no purpose.  It's clear

10      you are correct, if a Court of Appeals says to a

11      District Court, "This is what you've got to do," and

12      the District Court goes and refuses to do it that

13      would be one thing.  But the reason for the

14      instruction was the failure of the definition of the

15      class and the calculation of the judgment to match.

16      And the District Court recognized that it was never

17      going to match with that definition of the class so it

18      changed the class definition.  And, that seems to me

19      to be reasonable, and we could say, "Well you couldn't

20      do that without our permission."  So, now you go back

21      and do it, and then we'd just be spinning wheels.  So,

22      I don't think that's going to get you terribly far.

23          MR. BOCCUZZI:  I don't think the Court has

24      to speak in that harsh voice to the District Court.  I

25      think though…

1              JUDGE LEVAL:  Well, we can say it in a

2       gentle way.

3              [laughter]

4              MR. BOCCUZZI:  Well the—exactly.  The

5       mandate rule encompasses both the specific

6       instructions given by this Court but also what was

7       impliedly decided by the Court.  And the issue that

8       was before the Court both times, was the class—the

9       aggregate class judgment.  But also, these Plaintiffs

10      did not appeal, at any time, the continuous holder

11      definition that was the basis for the two appeals.

12      They could have done so and the Benz V [phonetic] case

13      and the Spampo [phonetic] case talk about if you

14      didn't do it, you can't now improve your position by

15      basically bringing that appeal to the District Court

16      when we've been now, for ten years under this class

17      definition.  But, the other point was, I don't think

18      this Court's reasoning in SAOS1 and SAOS2 was so

19      narrow to just speak as to the miss-match between the

20      judgments and there amounts and the class definition.

21      The problem of secondary trading in these bonds will

22      plague the judgments under their definition as well.

23      Because they just define this class to be anyone who

24      holds a bond—an Argentine defaulted bond—who isn't

25      otherwise suing at any time.  And so…

1              JUDGE LEVAL:  There is a problem with the

2      District Court's class definition.  It seems to me

3      that it says holder and doesn't, but it doesn't say

4      when.  But, one of the points you've made in your

5      brief is ascertainability.  And you say that that this

6      class is not ascertainable because of the trading in

7      the secondary market.  But, it seems to me that would

8      lead to the conclusion, if we accepted your argument,

9      lead to the conclusion that there can never be a class

10     action on behalf of holders of a bearer security where

11     their complaint is simply we want to be paid in

12     accordance with the terms of the instrument.  Because,

13     as long as the instrument is a bearer instrument, it

14     can go on being traded and, it seems to me they are

15     ascertainable.  But, they're not ascertainable until

16     the date when they present them, say, "Here's my

17     security, I want to be paid."  Why is that not

18     sufficient and satisfactory for a class action on

19     behalf of a class consisted of the holders of a bearer

20     security whose complaint is that at some point in the

21     past there was a false statement that misled them, but

22     they just say, "Our complaint is we want to be paid in

23     accordance with the terms of the instrument."  The

24     class is really the piece of paper.  That's the class.

25              MR. BOCCUZZI:  I think the key, Judge Leval,

1        is when they come forward and say, "Here's my piece of

2        paper, I want to be paid."  All we're saying, and this

3        is consistent with what this Court discussed in the

4        VISA check case, is that that needs to come before the

5        time of judgment…

6                JUDGE LEVAL:  Why? Why?

7                MR. BOCCUZZI:  …Because, otherwise we are

8        left with what SAOS2 said we can't have, which is you

9        enter a judgment, and then you have a claims process

10       after, and what you're going to have in that claims

11       process is a verification that the judgment will be

12       overstated.  And the reason why…

13               JUDGE LEVAL:  Why should the judgment be

14       overstated?

15               MR. BOCCUZZI:  …Because…

16               JUDGE LEVAL:  Argentina knows the volume of

17       outstanding bonds.  Argentina knows that's

18       ascertainable, the volume of outstanding bonds and the

19       people who are entitled to it, are the holders of

20       those bonds.  It doesn't matter who they are.  Whoever

21       comes in with the bonds and says, "Here's a bond, I'm

22       entitled to payment."  They're ascertainable as of the

23       time that they present them for payment to the Court's

24       agent established to disburse the judgments.  Why

25       isn't that—why doesn't that satisfy the

1    ascertainability?

2             MR. BOCCUZZI:  I would say two things.  Our

3    experience in the SAOS1 and SAOS2 showed that in each

4    situation when the judge entered those aggregate

5    judgments, within a month or two months, someone

6    holding class bonds brought an individual lawsuit.

7    And so, that would show, that person is not in the

8    class.  And that means that the aggregate judgment was

9    overstated by the amount that that individual then

10   came forward and said, "I'm here, I'm not part of that

11   class."  And this happened now.  If we take the

12   measuring point, the date, last April 2014, when the

13   Court modified the class definition, since then there

14   have been $111.0 million of claims by individuals

15   holding class bonds.  And so, the point is, it's just

16   because these—everybody agrees these bonds continue to

17   trade…

18            JUDGE LEVAL:  They trade and then people opt

19   out of the class after the judgment and after the time

20   when, when they can present them to the Court's—well,

21   I mean that hasn't happened yet, here…

22            MR. BOCCUZZI:  But, we see that it could

23   happen and has happened.

24            JUDGE LEVAL:  So, why-why wouldn't that be

25   accounted for, why couldn't a procedure simply be

1          established by Argentina when somebody who is the

2          holder of $100.0 million of bonds brings a separate

3          action to collect on those bonds.  Then Argentina

4          could come to the Court and say, "Please deduct $100.0

5          million from the present judgment, and let us take

6          back $100.0 million from what we've put up."

7                    MR. BOCCUZZI:  Because I think that would be

8          inconsistent with what the Court said in SAOS2, in

9          footnote one, which it says, "First entering aggregate

10         judgments inconsistent with the foregoing and then

11         moving forward with an individual claims process would

12         not allay our concerns."  What you just described

13         Judge Leval is exactly that process.  We're accepting

14         that this judgment will be overstated and someday

15         subject to correction when someone comes forward and

16         says, "I'm not part of that class."

17                    JUDGE LEVAL:  I am correct, am I not, that

18         the argument that you are making would mean that you

19         could, if we accepted that argument, there could never

20         be a class action on the hold—on behalf of the holders

21         of bearer bonds or bearer securities—bearer bonds,

22         bearer obligations, whose claim is simply, "We want to

23         be paid in accordance with what's stated on the face

24         of…"

25                    MR. BOCCUZZI:  I think you can have a class

1       for purposes of setting liability, and then you would

2       move into what VISA check described as three possible

3       alternatives, either you decertify the class for

4       purposes of individual judgments, you appoint a

5       special master to do a claims process.  And there was

6       one other procedure, I can't remember.  But it

7       wouldn't knock out the concept of class action in

8       these context, because you could do exactly what—and

9       with the District Court, for years said he imagined

10      would happen, "I'll enter summary judgment, and then

11      people…"  And it's provided for under 23(C) or (D)

12      [phonetic], the Rule has changed, the ability to

13      present claims as part of the class process.  So …

14            JUDGE LEVAL:  I have to ask you to slow down

15      and say that again.  How—what I understand you to be

16      saying is there is a process by which you can have a

17      class action on behalf of the holders of bearer

18      securities, bearer debt securities whose claim is, "We

19      just want to be paid in accordance with what the bond

20      entitles us to."  So, how does the Court do that?

21      Legitimately…

22            MR. BOCCUZZI:  You could certify a class and

23      you could have a ruling that says this debt is owed.

24      Which is what happened here.  There was summary

25      judgment on the question of liability.  But then for

1       purposes of damages, you would follow some of the

2       procedures that are suggested in this Court's ruling

3       in the VISA Check case where it talked about coming

4       forward to present claims, decertifying the class,

5       etc.  And so, that would fit with then having

6       judgments that are accurate and what the Court was

7       talking about in SAOS1 and SAOS2, and would also be

8       consistent with what Judge Broussea [phonetic] held in

9       the early days of these class actions after they were

10      certified which he said, Rule 23 allows for the

11      presentation of claims.  Which is, i.e., the

12      Plaintiffs coming forward and saying what you've been

13      saying, "I have this bond, I'm owed this amount of

14      money."  That should be reflected in a judgment.

15                  JUDGE LEVAL:  - - seem to be completely

16      irrelevant to the problem.  Those two cases, the—our

17      earlier cases seem to be irrelevant to the problem we

18      have now.  Because what the concern themselves with is

19      the impossibility of knowing whether people had

20      acquired their bonds through secondary process and the

21      irrelevancy to this whole process of having held

22      continuously.  What matters is holding security at the

23      time that it's presented for payment.  That's what

24      matters, not how long you've held it or where you got,

25      or when you got it or from whom.  So, I don't see that

1        those cases really have any bearing on what's now

2        before us.

3                    MR. BOCCUZZI:  I would just say, the

4        continuous holder requirement.  The requirement that's

5        been in this case since they were certified back in

6        2008—has - - 2005, reflects, first of all, the Judge's

7        original understanding what would make these classes

8        ascertainable and management.  Because, think about

9        it, the case law, the Folsom X [phonetic] case which

10       we cite says there has to be an administrative way to

11       identify who is in the class and what the Plaintiffs

12       are proposing is that, well, we say it's anyone who

13       holds a bond at any time.  So, that means, I hold a

14       bond…

15                   JUDGE LEVAL:  No. Not at any time.  Not any

16       time.  Somebody who held the bond three years ago and

17       no longer holds it, is not entitled to be paid

18       obviously for that bond.  It's somebody who holds the

19       bond and presents it for payment under the judgment.

20                   MR. BOCCUZZI:  But, again, that does make

21       the teaching of SAOS1 and SAOS2 relevant.  Because if

22       you don't have a match-up, you're going to have an

23       overstated judgment.

24                   JUDGE RAGGI:  May I ask a question that goes

25       to the match-up?  Are these bonds identifiable in any

1          way?  Are they numbered so that they can be traced?

2                    MR. BOCCUZZI:  Yes, and just—Judge Leval was

3          using the term bearer bonds—they're not technically

4          bearer bonds the way we think about bearer bonds.  You

5          have a physical piece of paper and you clip coupons.

6          They're global registered bonds and what we're dealing

7          with are eight series of those bonds.  You've seen

8          their eight class actions…

9                    JUDGE RAGGI:  - - bonds are traceable?  I

10         ask this because, for purposes of ascertainability, I

11         understand your concern about, you have two buyers A

12         and B, one does not opt out, the other opts out on the

13         opt out date.  They both sell to C, C now holds both

14         types of bonds—some opted out, some not.  Sells to D,

15         and I mean all of this goes on and on.  Figuring out

16         when you've got the person who shows up holding the

17         bond and says, "I want to be paid." Whether that bond

18         was a bond that there was an opt out exercised on or

19         not, strikes me as a difficult question unless you can

20         tell me that they are identifiable through some kind

21         of registry.

22                   MR. BOCCUZZI:  They're not.  And for any

23         given series of bonds, so the eight series, they're

24         completely fungible.  So, if I…

25                   JUDGE LEVAL:  - - not numbered.

1              MR. BOCCUZZI:  No.  What all your account

2         statement would say is you have $100.00 of principal

3         of this cusip number, where that cusip number is the

4         number that applies to everyone else in that holding

5         that series of bonds.

6              JUDGE RAGGI:  All right, so the continuous

7         holding requirement tried to eliminate that problem

8         that I just identified because it didn't have people

9         who had played in the secondary market at all.

10             MR. BOCCUZZI:  Correct.

11             JUDGE RAGGI:  All right.  Other than the

12        example I gave you of not being able to distinguish

13        opt out bonds from not opt out bonds, is there

14        something—some other ascertainability problem with the

15        class that the District Judge has now certified?

16             MR. BOCCUZZI:  The ascertainability problem

17        is in addition…

18             JUDGE RAGGI:  No, just with respect to

19        ascertainability, is it the opt out problem that I've

20        just identified?

21             MR. BOCCUZZI:  Well, I would also say,

22        ascertainability requires, if we just stood here today

23        and said who was in this class, I don't think it's

24        sufficiently ascertainable to say, "Well, person X is

25        in the class, and anyone he might sell to between now

1          and the time of judgment."  And that may be sold on

2          and on.  That's just not an ascertainable class.  We

3          don't know the identity of the people in the bonds…

4                    JUDGE RAGGI:  It will be whoever holds that

5          bond.

6                    MR. BOCCUZZI:  But, the problem is the

7          person who holds that bond may then bring their own

8          lawsuit, and they may do so after the judgment is

9          entered, and then you have the overstated judgment

10          situation. That's…

11                    JUDGE RAGGI:  Wouldn't that depend on

12          whether the opt out date would have passed, so we

13          would know at that point how many people had opted in

14          and out.  My concern is we can't tell…

15                    MR. BOCCUZZI:  You can't tell…

16                    JUDGE RAGGI:  …down the road what the opt

17          out is.

18                    MR. BOCCUZZI:  Right.

19                    JUDGE RAGGI:  But, but is—if you could, if

20          you could be sure that these were the bonds that had

21          not opted out, why would you care other than whose got

22          them in hand at the time they're looking for payment.

23                    MR. BOCCUZZI:  But I think that you also get

24          into the issue of the notice requirements.  Because

25          the Ninth Circuit case that we cite, Valentino…

PROCEEDINGS

1                  JUDGE RAGGI:  - - ascertainability - - .

2                  MR. BOCCUZZI:  Right.  But it raises the

3          problem of that case put it well, in terms of words,

4          we don't know today who may be in the class, so how

5          can we have adequate notice to reach those people?

6          So, whether you have the ability to parse opt out

7          versus opt out bonds, which you don't if they're sold

8          on.  You're facing the situation where someone who

9          buys in the secondary market and then brings a claim

10         on their own, and then someone, either, I guess the

11         Plaintiff class counsel will say, "Stop you're a

12         renegade class member."  Or the Republic would say,

13         "I'm being now sued twice with respect to the same

14         interest, because this fellow should be counted in the

15         class."  That person would then be litigating the

16         notice question and all that ancillary litigation over

17         that, and if they prevail, yet again, we are in a

18         situation of an overstated judgment.  So, I don't

19         think the Court's modification answers to secondary

20         trading problem and I think the two statements on the

21         record by the Court when we had the hearing were

22         relevant.  The judge expressed his frustration which I

23         know is shared by many about the non-payment of

24         judgments.  But SAOS1 said, while that might be a

25         practical consideration, we still need to have

1        aggregate judgments.  And the judge also mentioned the

2        streamlining of judgments which means this is all

3        heading towards SAOS4 which would be the exact same

4        methodology rejected in the first two SAOS cases and

5        that real presence of overstated judgments which SAOS1

6        and SAOS2 said we can't have.

7               JUDGE LEVAL:  So, what brings a separate

8        suit?  If a bond holder brings a separate suit, that

9        bond holder, I would assume, cannot continue to

10       maintain that separate suit and at the same time sell

11       the bond.  Right?  If I bring a suit against Argentina

12       based on $100.0 million of bonds that I hold, I can't

13       after bring the suit, sell the bond, but continue to

14       maintain the suit.

15              MR. BOCCUZZI:  Right.

16              JUDGE LEVAL:  So, how would Argentina in

17       such—how would Argentina protect itself in such a

18       suit.  Would the—Argentina demand that the bonds that

19       are the subject of the suit be put up with the Court

20       so that the bond holder can't continue to maintain the

21       suit without continuing to hold the bonds?

22              MR. BOCCUZZI:  What happens is, the bond

23       holder who brings an individual claim, when they move

24       for summary judgment, must have reasonably recent

25       evidence, an account statement that they hold the

1          bond.  When the Court enters summary judgment, then

2          there's a judgment that's entered and the judgment

3          says that there's a court order restricting that

4          person from moving the bonds or selling the bonds

5          without court approval.

6                    JUDGE LEVAL:  So, I don't understand why—

7          assuming that a judgment were entered for X billion

8          dollars, or whatever the number is, X dollars, based

9          on the outstanding volume of the bonds.  And then as

10         you hypothesized in your answer to me earlier, bond

11         holders bring suits elsewhere through another route,

12         which would disqualify them from participating in

13         this—from bring participants in this class, why can't

14         Argentina then go to the District Court that entered

15         the judgment in this case, and say, "Deduct that from

16         the amount of the judgment and give us back that

17         amount of money that we put up."  Why doesn't that—why

18         wouldn't such a procedure completely take care of the

19         problem that you're raising?

20                    MR. BOCCUZZI:  Because, meanwhile, these

21         folks with this as posited overstated judgments,

22         because there's someone out there who's now got a bond

23         who has or may be bringing a new lawsuit.  Say, they

24         haven't done it yet.  They're seeking to attach assets

25         or get injunctions that are based on an amount of

PROCEEDINGS

1      payment owed to them that are based on that larger

2      overstated amount.  And SAOS says we can't have that.

3      Which is fair.

4              JUDGE LEVAL:  Then if they take an action

5      that is incompatible with their class membership,

6      they—that amount is to—the amount on behalf of which

7      they take that action is deducted from the judgment

8      and is given back to Argentina.  I don't see why it's

9      a problem.

10              MR. BOCCUZZI:  Well, I think it's a problem

11      for the…

12              JUDGE LEVAL:  You do anticipate paying out

13      the entire amount—I mean you perhaps don't—but at

14      least in theory.  In theory, Argentina has to pay out

15      the amount of the bonds, right?

16              MR. BOCCUZZI:  That's the claim that's being

17      brought.

18              JUDGE LEVAL:  Well, but that's—but that's

19      what Argentina has to anticipate, no?  You are liable

20      for that amount.

21              MR. BOCCUZZI:  But we're liable for the

22      amount, not double that amount or more than that

23      amount.  - - suits.

24              JUDGE LEVAL:  So, my proposition is when

25      anybody brings a separate root action, you have the

 1          entitlement to protect yourself from double liability

 2          by immediately deducting the amount that is claimed in

 3          the separate suit from the amount that's held here and

 4          getting that back, if you've put it up.

 5                    MR. BOCCUZZI:  All I can say is, Your Honor,

 6          I think that's just inconsistent with SAOS1 and SAOS2.

 7          It's a possible mechanism, but unless that second

 8          person has brought the suit, it's unknown, it's

 9          unknown to us, it's unknown to these folks and they're

10          pursuing remedies based on the larger inflated

11          judgment which SAOS1 and SAOS2 say you can't do.  And

12          the question becomes after a while, since the Rules

13          Enabling Act does not require, or does not permit the

14          enlargements of substantive rights, when will they

15          finally be required to come forward and present their

16          claim so that the situation now…

17                    JUDGE LEVAL:  Is there anything in law that

18          prevents what I am proposing being done?  Is there

19          anything that—say the District Judge enters a judgment

20          for X billion dollars, and then because of the

21          bringing of subsequent suits, Argentina goes to the

22          District Court and says, "Well, there's been a claim

23          for $386 million in this suit, that suit and that

24          suit, so we ask you to modify the judgment, and give

25          us back the $386 million that we put up."  Is there

1    anything that stops that from happening?

2          MR. BOCCUZZI:  I don't think there's

3    anything that allows for that to happen.  The finding

4    of a…

5          JUDGE LEVAL:  My question is, is there

6    anything that stops it?  Anything that prevents it?

7          MR. BOCCUZZI:  I think this Court's

8    precedent in SAOS1 and SAOS2 and McLaughlin [phonetic]

9    which requires judgments that be connected to the

10   amount of damages owed to the plaintiffs or the

11   plaintiff class.  I think that would—that would have

12   to be the case Your Honor.  And, in either—I think in

13   SAOS2…

14         JUDGE RAGGI:  I think the reality here is

15   that we are unlikely to see Argentina deposit a sum of

16   money in the amount of any class judgment rather the

17   class judgment would be entered and the Plaintiffs

18   would then chase around after assets to attach as

19   you've just stated a moment ago some of them of which

20   may have to be sold to realize their value, right?

21         MR. BOCCUZZI:  Right, you'd have…

22         JUDGE RAGGI:  On the other hand, the

23   alternative is that if we use some of the options you

24   say individuals would not simply you know, go up to a

25   cash box out of which Argentina would pay their bonds

1      each of them individually would now have to go after

2      Argentina's assets.  Isn't that the alternative that

3      we're left with?

4                MR. BOCCUZZI:  No, I think what Judge

5      Broussea originally contemplated was that you would

6      have this claims presentation process, pre-judgment,

7      and then that would be reflected in a judgment for

8      this group of Plaintiffs. Whether you called that a

9      class judgment or an individual…

10               JUDGE RAGGI:  So people would line up and

11     when the 100 people who demonstrated that they were

12     owed money, the amount would be entered in that amount

13     and then the Plaintiffs' attorneys would go after

14     Argentina's assets?

15               MR. BOCCUZZI:  Correct.

16               JUDGE RAGGI:  All right.  Why don't we hear

17     from—I know you want to reserve some time for

18     rebuttal.  Why don't we hear from the Plaintiff?

19               MR. BOCCUZZI:  Thank you Your Honor.

20               JUDGE RAGGI:  Thank you.

21               MS. JENNIFER SCULLION:  Good morning and may

22     I please the Court?  Jennifer Scullion for the class

23     Plaintiff.  Judge Broussea's decision--

24               JUDGE RAGGI:  Ms. Sullivan?

25               MS. SCULLION:  Scullion, thank you.

PROCEEDINGS

1           JUDGE LEVAL:  Let me share with you my

2     concern and obviously you would have intended on

3     addressing it but hopefully you'll do it immediately

4     and directly and tell me why I'm wrong.  It's been a

5     good bit of discussion here about who might be paid

6     and how much that will be.  And yet it seems to me in

7     viewing this case, perhaps simplistically that this

8     has all been done and no one seems to want to follow

9     prior directions.  And by that I mean that you all

10    wanted at the outset to have the class defined as

11    holders at any time.  District Court disagreed and

12    said no they have got to be continuous holders at the

13    time the claim the judgment.  We affirm that.  We said

14    yes, that is what the class is here.  Then went back

15    to the district court and by the way, during the

16    course of that first appeal, I don't believe you

17    appealed the designation of the class.  You did not

18    maintain your position before us, that continuous

19    holder was wrong.  I believe Argentina raised the

20    issue with some perhaps - - but we held continuous

21    holder is the proper designation of the class.  It

22    went back to the District Court at our direction to

23    look at the aggregated judgment and how do you get

24    there.  It then came back to us in respect of the

25    aggregate judgment and we vacated that.  However, you

PROCEEDINGS

1          did not present to us on the second appeal any

2          infirmity in respect to whether the class was properly

3          designated as a continuous hold.  So twice you had the

4          opportunity on appeal to question that issue and you

5          did not.  We sent it back to the District Court with a

6          formula to deal with the aggregate judgment.  Again,

7          perhaps reduced to a simplicity the District Court

8          seemed to find that a little too complicated and so

9          the District Court upon your motion at that time after

10         having failed to appeal it twice, reverted to your

11         definition of the class as being holder rather than

12         continuous holder.  So at bottom, it seems to me, that

13         you have forfeited that argument.  The District Court

14         was without power to redefine the class given this

15         Court's actions and your lack of action in Seijas I

16         and in Seijas II.  What say you…

17               MS. SCULLION:  Thank you, Your Honor.  As

18         Judge Leval point out, the mandate in Seijas I and

19         Seijas II, the mandates did not restrain the District

20         Court from exercising its discretion under 23C1C to

21         revisit the class definition due to manageability

22         issues that the Court observed developed over time in

23         part because the Court was observing what this Court

24         had directed as required in order to have aggregate

25         judgments for a continuous holder class.  The District

1           Court when it did…

2                     JUDGE LEVAL:  Oh we did give the District

3           Court a formula to follow.  The District Court said

4           this is too hard.  I'm going to redefine the class.

5                     MS. SCULLION: That is correct.  This Court

6           gave the District Court instructions with how to

7           determine an aggregate judgment for a continuous

8           holder class definition.  All they…

9                     JUDGE LEVAL:  Had you let that process play

10          out, then you would have had an argument to make and

11          in the third appeal that the method by which the

12          judgments were achieved was either erroneous or

13          impossible and that the Second Circuit was wrong in

14          the formula it suggested in Seijas II.

15                    MS. SCULLION:  Your Honor, we don't believe

16          the…

17                    JUDGE LEVAL: Instead you sought to redo the

18          class.

19                    MS. SCULLION:  We don't believe the Court

20          was wrong in terms of the formula for determining an

21          aggregate judgment and for continuous holder class.

22          And on remand from Seijas II, we did attempt to comply

23          with the instructions this Court issued.  We did ask

24          for discovery to try to determine with more

25          specificity what the actual volume of continuous

1          versus non-continuous holders was.  When it became

2          clear that that information could only be gleamed

3          through voluminous burdensome third party discovery

4          including discovery into individual accounts outside

5          of the United States.

6                    JUDGE LEVAL:  The loss of litigation.

7                    MS. SCULLION:  And, Your Honor, it is in

8          fact a manageability issue under Rule 23.  And Rule 23

9          C1C was specifically designed to allow a district

10         court to revisit class certification in light of

11         manageability issues that often do develop as the case

12         progresses.

13                   JUDGE LEVAL:  But made those arguments in

14         the two prior appeals.

15                   MS. SCULLION:  That's correct.

16                   JUDGE LEVAL:  And never had any complaint

17         about the classification being continuous holders.

18                   MS. SCULLION:  That's correct and that's

19         because we and the District Court believed that the

20         continuous hold definition was manageable.  We tried

21         to manage it.  We tried to get an expert to opine with

22         respect to what the amount of a continuous holder

23         judgment should be.  This Court did not find that

24         sufficient.  On a remand we tried to take discovery

25         from Argentina to determine what the volume of the

```
 1          continuous holder class would be.  They said they did

 2          not have the information.  And, Your Honor, we did not

 3          cross appeal the continuous holder definition earlier

 4          in part because again we thought it was manageable.

 5          The District Court thought it was manageable.  But

 6          two, in fact the judgments that we were--that were

 7          entered did fully satisfy the plaintiff classes.  They

 8          literally were for the full amount of the outstanding

 9          bonds other than those that had been exchanged or

10          opted out through other litigation.

11                    JUDGE RAGGI:  Right.

12                    MS. SCULLION:  So there literally was no…

13                    JUDGE LEVAL:  And you would like to

14          represent all the holders which would have brought a

15          greater judgment rather than continuous holders.

16                    MS. SCULLION:  The amount of the…

17                    JUDGE LEVAL:  So you did have an incentive.

18                    MS. SCULLION:  The amount of the judgment

19          was in fact--and that was what this Court found to be

20          the problem with the judgments was that the amount of

21          the judgments was the amount for a holder class, not

22          for continuous holder.  We literally were not

23          aggrieved by the full amount of the judgment and could

24          not have gotten any more money on a judgment under a

25          holder class definition.
```

1          JUDGE RAGGI:  My concern which follows from

2     Judge Straub is that the order of this Court or the

3     instructions of this Court did not give a lot of

4     flexibility.  Like if there was a problem with

5     reasonable accurate estimates, the District Court

6     shall take whatever other action it deems appropriate.

7     Rather it was as if no reasonably accurate non-

8     speculative estimate can be made according to the

9     formula we gave.  Then determine how to proceed with

10    awarding damages on an individual basis.  I mean that

11    has been a long litigation.  And while there are

12    certainly advantages to it being pursued as a class on

13    some levels, I think the instructions suggest that if

14    this formula wasn't going to work after having come up

15    to us twice, then figure out how to proceed on an

16    individual basis.  So tell us why that wasn't the

17    instruction that should have been followed.  When the

18    problems you have identified emerged.

19          MS. SCULLION:  And that was the instruction

20    with respect to the continuous holder class definition

21    in how to calculate aggregate…

22          JUDGE RAGGI:  That was the class that had

23    now--

24          MS. SCULLION:  That's right.

25          JUDGE RAGGI:  --proceeded through years of

1       litigation.  So it's hardly surprising.

2                    MS. SCULLION:  And again, those instructions

3       were tend to be followed below and that's when the

4       District…

5                    JUDGE RAGGI:  The last one was not.

6                    MS. SCULLION:  That's--yes that's because

7       the District Court correctly agreed with us, we

8       believe, that became evident that there were

9       manageability issues with the continuous hold

10      definition.  In Seijas I….

11                   JUDGE RAGGI:  And if there were, if there

12      were so that no non-speculative estimate could be

13      made, then what the District Court was to do was to

14      determine how to proceed with awarding damages on an

15      individual basis.  What's your argument for how the--

16      why the District Court did not have to follow that?

17                   MS. SCULLION:  And that is because it's

18      inherent in what 23C13 is designed to do.  It is

19      designed specifically to allow a District Court to

20      revisit class certification issues from manageability.

21                   JUDGE RAGGI:  Yes may allow district judges

22      to do all kinds of things.  But in particular cases

23      especially once there has been a lot of litigation, an

24      instruction to do X even though a rule may also allow

25      Y doesn't seem to me to let you just say well the rule

1          says we can do more.  There was an instruction in this

2          case given the extent of litigation time that had been

3          taken up by the parties and the courts.

4                    MS. SCULLION:  So two things on that.  This

5          court's precedent both in Spampo and in In Re IPO,

6          made clear that mandates really do address only the

7          issues that are before the Court.  And if it was

8          before this Court was how to calculate aggregate

9          judgments under continuous holder definitions.

10                   JUDGE RAGGI:  That's not exactly right is

11         there was a judgment before the Court and that

12         judgment was appealed.  And we vacated it.

13                   MS. SCULLION:  Yes.

14                   JUDGE RAGGI:  So we weren't, you know,

15         deciding some abstract--we vacated that judgment and

16         we gave the District Court instructions as to this.

17         But let me move you beyond this.  Your adversary's

18         position is that even if the District Court could

19         redefine the class, what he has done is come up with a

20         class that presents its own problems specifically with

21         respect to ascertain ability.  You heard my attempt at

22         a hypothetical with Mr. Boccuzzi about the possibility

23         that both a person who opted in and a person who opted

24         out would sell in the secondary market to the same

25         holder.  That holder would now hold both types of

1       bonds.  Could sell part of them down to some yet

2       fourth individual.  And as this goes on and on, it

3       becomes impossible to ascertain who's opted in and

4       who's opted out.  So tell me why I should not be

5       troubled by ascertain ability here.

6               MS. SCULLION:  So for a number of reasons.

7       First ascertain ability I think as Judge Leval was

8       alluding is in fact a relatively low bar and only

9       requires there to be an objective means to determine

10      class membership that indisputably exists here because

11      individuals will have account statements to show do

12      they hold, do they not hold.  On that there…

13              JUDGE RAGGI:  Well tell us whether they hold

14      bonds that are on the opt out date were opted in or

15      out.

16              MS. SCULLION:  So on that, as of the notice

17      is going to go out for opt outs.  Will include and if

18      it's not sufficient, it can be inventive to include

19      it's not been decided yet by District Court.  Will

20      include instructions to all holders.  If you--the opt

21      out date is relevant, if you sell after the opt out

22      date to whomever you sell will be bound by your

23      decision about whether to opt it out or not.

24              JUDGE RAGGI:  Right.

25              MS. SCULLION:  And that notice will persist

1          out there in the marketplace, it will go out through…

2                    JUDGE RAGGI:  And how will you identify

3          those bonds when someone shows up looking to be paid

4          as part of the class?

5                    MS. SCULLION:  Right.  So first of all, with

6          respect to when that would occur, Judge Leval I think

7          is correct that that will occur post judgment.  I

8          would note on the continuous hold…

9                    JUDGE RAGGI:  I'm sorry, what will occur?

10                    MS. SCULLION:  The presentment of claims and

11          determining.

12                    JUDGE RAGGI:  Okay.

13                    MS. SCULLION:  Okay.

14                    JUDGE RAGGI:  But not necessarily the

15          judgment and then we're calculating the judgment based

16          on what?

17                    MS. SCULLION:  Yeah the judgment will be

18          based on the finite set…

19                    JUDGE RAGGI:  You opt in those only who's

20          opted in.

21                    MS. SCULLION:  Those who are left after the

22          opt out.  Correct.

23                    JUDGE RAGGI:  Yeah.

24                    MS. SCULLION:  Or have not otherwise

25          exchanged or in other litigation.  We will get to a

1          judgment date.

2                    JUDGE RAGGI:  Right.

3                    MS. SCULLION:  That will determine who the

4          holders then are for purposes of the judgment as…

5                    JUDGE RAGGI:  We don't understand that.  How

6          will we know who the holders are?

7                    MS. SCULLION:  Sure.  When the holders come

8          to present their claim post judgment, the first

9          question that is going to be asked is when did you

10          acquire that bond?  And again the account statements

11          will show when they acquired.  Anyone who acquired

12          after the…

13                    JUDGE RAGGI:  After the opt out date.

14                    MS. SCULLION:  anyone who acquired after the

15          opt out date is going to have to prove up their chain

16          of acquisition.  And they're going to get notice of

17          that in the notice for opt out.  The markets going to

18          understand that if you buy and sell these bonds, after

19          the opt out date, be sure that you know what you are

20          doing because there will be consequences.  And if you

21          want to claim class membership on bonds that you

22          purchased after the opt out date you will have to

23          prove up your chain of acquisition to show you did not

24          acquire it for someone who opted out.  That is a

25          manageable process.  It is certainly a supervisor

PROCEEDINGS

1     process to reverting to individualized, individual

2     bond holders having to try to collect enforce on

3     judgments against Argentina which has made perfectly

4     clear to everyone including the largest bond holders

5     that it is not going to cooperate.  It's not going to

6     pay.  It's not even going to talk settlement and in

7     fact it's going to dishonor this Courts…

8                 JUDGE RAGGI:  My understanding is the - -

9     mark when it's not buying actual bonds.  But

10    beneficial interest, have I mis--

11                MS. SCULLION:  I apologize.  I did not hear

12    you.

13                JUDGE RAGGI:  I am sorry.  I thought that

14    one was not buying actual bonds but beneficial

15    interests.

16                MS. SCULLION:  That's correct.  And the

17    beneficial interests are recorded on individual

18    account statements.  The account statements say when

19    you purchased and the amount that you hold and again

20    so after judgment, if someone has--comes in with an

21    account statement that shows they purchased after the

22    opt out date, it'll be incumbent on them to prove up

23    their chain of acquisition.  And again these bonds,

24    the secondary market is not just some run of the mill

25    regular bond trading market.  This is distressed debt.

1          This is distressed debt that is followed keenly by all

2          of the papers.  Everyone pays attention to every legal

3          proceeding.  Anyone who buys these buys post the opt

4          out date is not doing it because they think Argentina

5          can pay that.

6                    JUDGE LEVAL:  Mr. Boccuzzi raises the

7          problem of holders who subsequent to the judgment go

8          and bring individual actions separate actions.  How to

9          account for those with respect to the administration

10          of this case?

11                    MS. SCULLION:  Yeah, and I was--I found Mr.

12          Boccuzzi's response curious because if someone brings

13          an action after judgment, again the first question

14          Argentina is going to ask is when did you acquire

15          those bonds to see whether in fact if they acquired

16          those bonds, from a member of the class, Argentina's

17          next motion will be to dismiss because that lawsuit is

18          barred by the judgment in the classes here.  Those

19          people if they're members of the class, they cannot

20          post judgment, go and bring separate lawsuits.  That's

21          a nature of a class action.  It's what protects

22          Argentina from double recovery.  There is no chance of

23          double recovery when you have a judgment.  The

24          judgment will merge and extinguish Argentina's payment

25          obligations with respect to the bonds.  There may be

PROCEEDINGS

1    other obligations with respect to the bonds like Perry

2    Pasui [phonetic] that may persist.  But there is no

3    more ability to bring another lawsuit on the bond once

4    a judgment has been entered for that bond in the

5    class--

6                    JUDGE RAGGI:  Right.

7                    MS. SCULLION:  --here.

8                    JUDGE RAGGI:  Thank you very much.

9                    MS. SCULLION:  Thank you.

10                    JUDGE RAGGI:  Mr. Boccuzzi you have

11    rebuttal.

12                    MR. BOCCUZZI:  Thank you.  Just briefly.  On

13    the issue of this question of the continuous holder

14    definition, this was not a new issue that caught

15    counsel by surprise after the second remand from this

16    Court.  In the first oral argument in Seijas I counsel

17    was asked why should there be a judgment that is

18    virtually certainly overstated and probably

19    substantially so.  Plaintiff's counsel answer was I

20    would suggest a better remedy for that would be to

21    modify the class definition to all current holders.

22    Then you take that issue away.  So this idea of

23    having--and they say current holders which is

24    different from holder at any time up to judgment.  But

25    the point is the same.  This issue is something

```
 1              they're aware of.  They litigated for in the first

 2              round, they lost, and the continuous holder definition

 3              has been what's governed in this case since.  And

 4              rightfully so because that tracks what any normal

 5              litigant would do which is you would bring a complaint

 6              when you held a defaulted bond.  And if you held it at

 7              the end when there is a judgment, you would collect on

 8              it.  What is being described here by Ms. Scullion is

 9              not only contrary to Seijas II, the idea that we're

10              going to have a judgment and then in post-proceedings

11              figure out whether it needs to be adjusted.  It's also

12              completely contrary to what is supposed to be a

13              superior and more efficient method of adjudication.

14              This is a class action where we're exclusively being

15              told there will be subsequent litigation when people

16              who bought after the opt out have to then prove that

17              they bought it from someone who didn't opt out.

18                   JUDGE RAGGI:  Well what I understood her to

19              say in order to solve my ascertain ability problem was

20              that the judgment will be calculated by reference to

21              those who did not opt out on the opt out date.

22                   MR. BOCCUZZI:  Correct.

23                   JUDGE RAGGI:  And that thereafter when

24              claimants come forward, if they acquired after that

25              opt out date, it will be their responsibility to trace
```

1          their holdings back to someone who did not opt out.

2          Why doesn't that solve the concern?  You just

3          identified and ascertain ability?

4                   MR. BOCCUZZI:  Because then if they do, if

5          it is in fact shown that they bought through a chain

6          that leads to an opt out, then we will be in the

7          situation of a time one having an overstated judgment

8          which I would submit is a consistent…

9                   JUDGE RAGGI:  How about they're saying that,

10         they're saying that that opt out holders claims would

11         not have been factored into the judgment.  So you know

12         if you have a 100 people and 20 of them opt out,

13         they'll only calculate the judgment based on the

14         holdings of the remaining 80.  And that will be all

15         that can be attached or seized or paid or whatever.

16                  MR. BOCCUZZI:  So then, sorry, then the

17         converse which is that the person who bought, bought

18         through a chain from someone who did not opt out, then

19         we would have a situation where if they can establish

20         that notice wasn't satisfied as to them, they would

21         say I have my individual action, I'm not in your class

22         and the class judgment will have been overstated.  And

23         that's contrary to Seijas I and Seijas II, putting

24         aside the--I'm not ready to accept…

25                  JUDGE RAGGI:  Judge Leval's suggestion that

PROCEEDINGS                    39

```
 1          well as soon as that happens, you ask for that

 2          percentage of your holdings back.

 3                    MR. BOCCUZZI:  You would have to do that.

 4          But again Seijas II talks about the use of 60B to fix

 5          the wrong judgment and they say that's not acceptable.

 6          And again I'm not willing to concede as well that you

 7          could do that tracing to figure out the opt in, opt

 8          out.  This was an argument that was never discussed

 9          below as part of manageability.  But I would also

10          submit that that process is a lot more difficult than

11          just having people come forward now and present their

12          claims which again is contemplated in this Court's

13          class certification and class action jurisprudence and

14          is what the judge originally said when he certified

15          these classes.

16                    JUDGE RAGGI:  Thank you.

17                    MR. BOCCUZZI:  Thank you.

18                    JUDGE RAGGI:  We're going to take the matter

19          under advisement.

20                    [END OF HEARING]
```

### C E R T I F I C A T E

I, Deana M. Smith, certify that the foregoing transcript of proceedings in the United States Court of Appeals for the Second Circuit of Eduardo Puricelli, et al. v. The Republic of Argentina, Index No. 14-2104 (L) was prepared using the required transcription equipment and is a true and accurate record of the proceedings to the best of my ability. I further certify that I am not connected by blood, marriage or employment with any of the parties herein nor interested directly or indirectly in the matter transcribed.

Signature: _Deana M. Smith_

Date: June 30, 2015

<u>C E R T I F I C A T E</u>

I, Lynn M. Reinhardt, certify that the foregoing

transcript of proceedings in the United States Court of

Appeals for the Second Circuit of Eduardo Puricelli, et

al. v. The Republic of Argentina, Index No. 14-2104 (L)

was prepared using the required transcription equipment

and is a true and accurate record of the proceedings to

the best of my ability. I further certify that I am not

connected by blood, marriage or employment with any of the

parties herein nor interested directly or indirectly in

the matter transcribed.


Signature:  _____

Dated:  August 13, 2015

# Exhibit B

*SILVIA SEIJAS, et al. VS.*
*THE REPUBLIC OF ARGENTINA*

---

*MICHAEL ADLER*
*October 13, 2010*

---



**Ellen Grauer**
**COURT REPORTING** Co. LLC

126 East 56th Street, Fifth Floor New York, New York 10022
PHONE: (212) 750-6434   FAX: (212) 750-1097
www.ELLENGRAUER.com

*Original File 94885.TXT*
*Min-U-Script® with Word Index*

```
 1  UNITED STATES DISTRICT COURT

 2  SOUTHERN DISTRICT OF NEW YORK
    -----------------------------------------X
 3  SILVIA SEIJAS, et al.,

 4                     Plaintiffs,
        - against -
 5
    THE REPUBLIC OF ARGENTINA,
 6
                       Defendant.
 7
    INDEX NO.: 04 Civ. 400 (TPG)
 8  -----------------------------------------X
    SILVIA SEIJAS, et al.,
 9
                       Plaintiffs,
10      - against -

11  THE REPUBLIC OF ARGENTINA,

12                     Defendant.

13  INDEX NO.:  04 Civ. 401 (TPG)
    -----------------------------------------X
14  (CAPTION CONT'D ON FOLLOWING PAGE)

15
                       860 Riverside Drive
16                     New York, New York

17                     October 13, 2010
                       2:14 p.m.
18

19         Deposition of MICHAEL ADLER,

20  pursuant to Notice, before Stacey Raikes, a

21  Notary Public of the State of New York.

22

23     ELLEN GRAUER COURT REPORTING CO. LLC
          126 East 56th Street, Fifth Floor
24            New York, New York 10022
                  212-750-6434
25                  REF: 94885
```

```
1   (CONT'D FROM PREVIOUS PAGE)

2   UNITED STATES DISTRICT COURT

3   SOUTHERN DISTRICT OF NEW YORK
    ----------------------------------------X
4   CESAR RAUL CASTRO,

5                        Plaintiff,
       - against -
6
    THE REPUBLIC OF ARGENTINA,
7
                         Defendant.
8
    INDEX NO.:  04 Civ. 506 (TPG)
9   ----------------------------------------X
    HICKORY SECURITIES LTD.,
10
                         Plaintiff,
11     - against -

12  THE REPUBLIC OF ARGENTINA,

13                       Defendant.

14  INDEX NO.:  04 Civ. 936 (TPG)
    ----------------------------------------X
15  ELIZABETH ANDREA AZZA, et al.,

16                       Plaintiffs,
       - against -
17
    THE REPUBLIC OF ARGENTINA,
18
                         Defendant.
19
    INDEX NO.:  04 Civ. 937 (TPG)
20  ----------------------------------------X

21  (CAPTION CONT'D ON FOLLOWING PAGE)

22

23

24

25
```

```
1  (CONT'D FROM PREVIOUS PAGE)

2  UNITED STATES DISTRICT COURT

3  SOUTHERN DISTRICT OF NEW YORK
   ----------------------------------------X
4  ELIZABETH ANDREA AZZA, et al.,

5                      Plaintiffs,
      - against -
6
   THE REPUBLIC OF ARGENTINA,
7
                       Defendant.
8
   INDEX NO.:  04 Civ. 1085 (TPG)
9  ----------------------------------------X
   EDUARDO PURICELLI,
10
                      Plaintiff,
11    - against -

12 THE REPUBLIC OF ARGENTINA,

13                     Defendant.

14 INDEX NO.:  04 Civ. 2117 (TPG)
   ----------------------------------------X
15 RUBEN DANIEL CHORNY,

16                     Plaintiff,
      - against -
17
   THE REPUBLIC OF ARGENTINA,
18
                       Defendant.
19
   INDEX NO.:  04 Civ. 2118 (TPG)
20 ----------------------------------------X

21

22

23

24

25
```

```
 1   A P P E A R A N C E S:

 2

 3   DIAZ, REUS & TARG, LLP

 4   Attorneys for Plaintiffs

 5        100 SE 2nd Street

 6        2600 Bank of America Tower

 7        Miami, Florida  33131

 8   BY:  MARGARET T. PEREZ, ESQ.

 9        PHONE   305-375-9220

10        FAX     305-875-8050

11        EMAIL   mperez@diazreus.com

12

13

14   PROSKAUER ROSE LLP

15   Attorneys for Plaintiffs

16        1585 Broadway

17        New York, New York  10036

18   BY:  JENNIFER R. SCULLION, ESQ.

19             - and -

20        WILLIAM H. WEISMAN, ESQ.

21        PHONE   212-969-3655

22        FAX     212-969-2900

23        EMAIL   JSCULLION@Proskauer.com

24

25
```

```
 1   A P P E A R A N C E S:   (Cont'd)

 2

 3   CLEARY, GOTTLIEB, STEEN & HAMILTON LLP

 4   Attorneys for Defendant

 5        One Liberty Plaza

 6        New York, New York  10006

 7   BY:  CARMINE BOCCUZZI, ESQ.

 8             - and -

 9        MICHAEL BRENNAN, ESQ.

10        PHONE   212-225-2868

11        FAX     212-225-3999

12        EMAIL   CBoccuzzi@CGSH.com

13

14

15

16

17

18

19

20

21

22

23

24

25
```

1  ------------------- I N D E X -------------------

2  WITNESS                 EXAMINATION BY          PAGE

3  MICHAEL ADLER      MR. BOCCUZZI                 9

4

5

6  --------------- E X H I B I T S ----------------

7  ADLER            DESCRIPTION             FOR I.D.

8  Exhibit 1        Declaration                 8

9  Exhibit 2        Marked up declaration       29

10 Exhibit 3        Puricelli Twelve and

11                  Three-Eighths Percent       41

12 Exhibit 4        Defaulted Debt Trading

13                  Sinks as Elliott Bets on

14                  Courts:  Argentina Credit   75

15

16

17          (Exhibits retained by Ms. Scullion)

18

19

20

21

22

23

24

25

S T I P U L A T I O N S

IT IS HEREBY STIPULATED AND AGREED
by and between the attorneys for the
respective parties herein that the filing
and sealing of the within deposition be
waived.

IT IS FURTHER STIPULATED AND AGREED
that all objections, except as to the form
of the question, shall be reserved to the
time of the trial.

IT IS FURTHER STIPULATED AND AGREED
that the within deposition may be sworn to
and signed before any officer authorized to
administer an oath with the same force and
effect as if signed and sworn to before the
Court.

- oOo -

```
1                      ADLER
2        Q.    And it's not part of your opinion as
3   to what that number is?
4        A.    No.  Certainly not.
5        Q.    And you're not aware of how you
6   would model it, if it could be done?
7              MS. SCULLION:  Objection.  Asked and
8        answered and same objections as before.
9        Q.    You can answer.
10       A.    There's no model that you'd use.
11       Q.    And why is there no model?
12             MS. SCULLION:  Same objections.
13        Lacks foundation.  He's not been asked to
14        give an expert on opinion on this matter
15        in this case.
16       Q.    You may answer.
17       A.    You have to ask the people how much
18   they own.
19       Q.    Or the people who own the bonds need
20   to come forward and say I own this much?
21       A.    Yeah.
22             MS. SCULLION:  Same objections.
23       Q.    Right.
24             MR. BOCCUZZI:  I have no further
25        questions at this time.  I guess one thing
```

```
 1                C E R T I F I C A T E

 2

 3   STATE OF NEW YORK )

 4                          :ss

 5   COUNTY OF NEW YORK)

 6

 7              I, STACEY RAIKES, a Notary Public

 8   within and for the State of New York, do hereby

 9   certify:

10              That MICHAEL ADLER, the witness

11   whose deposition is hereinbefore set forth, was

12   duly sworn by me and that such deposition is a

13   true record of the testimony given by such

14   witness.

15              I further certify that I am not

16   related to any of the parties to this action by

17   blood or marriage; and that I am in no way

18   interested in the outcome of this matter.

19              IN WITNESS WHEREOF, I have hereunto

20   set my hand this 14th day of October, 2010.

21

22

23

24   _____

     STACEY RAIKES
25
```