UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

| | | |
|---|---|---|
| SILVIA SEIJAS, et al, | : | 04 Civ. 400 (TPG) |
| Plaintiffs, | : | |
| -against- | : | |
| | : | |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |

------------------------------------------------------------------------x

| | | |
|---|---|---|
| SILVIA SEIJAS, et al, | : | 04 Civ. 401 (TPG) |
| Plaintiffs, | : | |
| -against- | : | |
| | : | |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |

------------------------------------------------------------------------x

| | | |
|---|---|---|
| CESAR RAUL CASTRO, | : | 04 Civ. 506 (TPG) |
| Plaintiff, | : | |
| -against- | : | |
| | : | |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |

------------------------------------------------------------------------x

| | | |
|---|---|---|
| HICKORY SECURITIES LTD., | : | 04 Civ. 936 (TPG) |
| Plaintiff, | : | |
| -against- | : | |
| | : | |
| THE REPUBLIC OF ARGENTINA, | : | |
| Defendant. | : | |

------------------------------------------------------------------------x

## MEMORANDUM OF LAW
## IN SUPPORT OF
## MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

```
-------------------------------------------------------------------X
ELIZABETH ANDREA AZZA, et al,                    .    04 Civ. 937 (TPG)
                              Plaintiffs,    :
             -against-                       :

THE REPUBLIC OF ARGENTINA,                   :
                              Defendant.     :
-------------------------------------------------------------------x
ELIZABETH ANDREA AZZA, et al.,               :    04 Civ. 1085 (TPG)
                              Plaintiffs,    :
             -against-                       :
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                              Defendant.     :
-------------------------------------------------------------------
EDUARDO PURICELLI,                                x
                              Plaintiff,     :    04 Civ. 2117 (TPG)
             -against-                       :
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                              Defendant.     :
-------------------------------------------------------------------:
RUBEN DANIEL CHORNY,                              x
                              Plaintiff,     :    04 Civ. 2118 (TPG)
             -against-                       :
                                             :
THE REPUBLIC OF ARGENTINA,                   :
                              Defendant.     :
                                             :
-------------------------------------------------------------------x
```

PROSKAUER ROSE LLP
Eleven Times Square
New York, NY 10036
(212) 969-3000

LAW OFFICES OF SAUL ROFFE, ESQ.
52 Homestead Circle
Marlboro, NJ  07746
(732) 616-1304

DIAZ REUS & TARG LLP
100 S.E. 2nd Street, Suite 3400
Miami, FL 33131
(305) 375-9220
*Co-Lead Counsel for Plaintiff Classes*

**TABLE OF CONTENTS**

**Page**

I. RELEVANT BACKGROUND ...................................................................................2

    A.    The Class Bonds and Default................................................................2

    B.    Class Certification and Opt Out Mechanisms..........................................2

    C.    Discovery .........................................................................................3

    D.    Judgments and Appeals.......................................................................4

    E.    Argentina's February 2016 Settlement Proposal and Lifting of the Pari Passu Injunctions ...............................................................................5

    F.    Negotiation and Settlement-in-Principle................................................5

II. THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT

AGREEMENT .....................................................................................................7

    A.    Legal Standard ..................................................................................7

    B.    The Proposed Settlement is Fair, Reasonable and Adequate Under the Circumstances ...................................................................................7

    C.    The Proposed Settlement Obviates Any Need to Conduct an Evidentiary Hearing on Class Damages .................................................................11

CONCLUSION...................................................................................................12

Plaintiffs in the above-captioned class actions respectfully submit this memorandum of law in support of their motion for preliminary approval of the settlement agreed to with the Republic of Argentina ("Argentina"), as well as approval of a proposed (1) plan for providing notice of the settlement to class members, (2) form of such notice, and (3) process and schedule for final approval of the settlement under Fed. R. Civ. P. 23, award of class counsel fees, costs, and expenses, and entry of final judgment.

As explained below and in the accompanying Declaration of Jennifer Scullion ("Scullion Decl."), the settlement provides class members with a fair, reasonable and adequate compromise of their claims under the circumstances – i.e., nearly twelve years of litigation, nearly fifteen years of default, the elimination of the pari passu injunctions and settlements by the holders of the vast majority of the outstanding bonds, and the return of Argentina to the U.S. credit markets despite the continuing default on the bonds held by class members and others. Indeed, the classes stand to obtain payments of 150% of principle (less counsel fees and expenses) even for bond series that, Argentina has claimed elsewhere in non-class cases, are barred by the statute of limitations.

The motion for preliminary approval should, therefore, be granted. Preliminary approval will also permit class counsel to begin the process to provide class members notice of the proposed settlement and of the intention to ask the court to award class counsel fees, costs, and expenses to be deducted from the settlement payment so that class members may be heard on both issues and may gather the necessary documentation to submit a claim for compensation as part of the settlement. If the Court subsequently grants final approval for the settlement and attorneys' fees, costs and expenses, these cases will at long last be concluded upon payment by Argentina of the settlement.

I.       RELEVANT BACKGROUND

The Court is familiar with the substance and history of these cases.  We recap the

relevant facts briefly here.  Except as noted, all citations to docket numbers are to the docket in

*Seijas, et al. v. Argentina*, 04-cv-400 (TPG) ("Dkt. __"), without cites to all eight parallel cases.

A.       **The Class Bonds and Default**

These class actions concern the following eight series of bonds issued by the Republic of

Argentina:

- Republic of Argentina 11% Global Notes due October 9, 2006,      US040114AN02

- Republic of Argentina 7% Global Notes due December 19, 2008    US040114GF14

- Republic of Argentina 9.75% Global Notes Due September 19, 2027, US040114AV28

- Republic of Argentina 11.75% Global Notes Due June 15, 2015, US040114GA27

- Republic of Argentina 11% Global Notes Due December 5, 2005, US040114AZ32

- Republic of Argentina 8.375% Global Notes Due December 20, 2003, US040114AH34

- Republic of Argentina 12.375% Global Notes Due February 21, 2012, US040114GD65

- Republic of Argentina Floating Rate L+0.8125 Global Notes Due March 2005,
  XS0043120582

(the "Class Bonds").

Argentina defaulted on the Class Bonds in 2001.  In 2004, the Plaintiffs filed these class

actions seeking to enforce payment and other rights with respect to the Class Bonds on behalf of

themselves and all other holders of the Class Bonds.  Dkt. 1.

B.       **Class Certification and Opt Out Mechanisms**

In 2005, the Court certified classes consisting of the "continuous holders" of Class

Bonds, meaning those who held at the time the relevant class action was filed and who held the

Class Bonds continuously through final judgment.  Dkt. 53.  Argentina sought an immediate

Rule 23(f) appeal from the certification, but the Second Circuit declined to proceed under Rule

23(f).  Dkt. 65.

Notice of class certification was published in accordance with the class certification

order.  Potential class members were afforded the opportunity to opt out of, or otherwise exit, the

classes in multiple ways over the past twelve years.

First, potential class members were allowed to formally opt out by sending written notice

by 2006.  A number of bondholders opted-out in this way.  Dkt. 67-68.

Second, potential class members also were deemed to have opted out if they simply had

filed their own lawsuit or claim in arbitration as of the date of class certification.  Dkt. 53 (Order

Granting Class Certification) at ¶ 2 (excluding "all persons or entities that brought an individual

claim to collect on the Bonds").

Third, in 2005 and 2010, Argentina floated exchange public offers to all bondholders,

including class members.  Over Plaintiffs' objections, the Court allowed class members to

participate in the exchange offers without any Rule 23 fairness process.  E.g., Dkt. 53, ¶ 2

(excluding participants in 2005 Exchange Offer).

Finally, because of the "continuous holder" nature of the classes, class members were

free at any point from 2004 to date to sell or transfer their interests in the Class Bonds and thus,

effectively, opt out.  An unknown number of class members left the classes in this way.

### C.    Discovery

The Plaintiffs and Argentina engaged in multiple rounds of discovery in connection with

class certification, assessment of the size of the classes, and potential avenues for the classes to

collect against Argentina.  This discovery included depositions of multiple class representatives,

document and data exchanges, and requests for non-party discovery.  Scullion Decl., ¶ 2.

> **D.      Judgments and Appeals**

After the classes initially were certified, the Court entered judgments for the classes in

2009.  Dkt. 124.  In 2010, the Second Circuit upheld the class certifications, but vacated the

judgments and directed the Court to better estimate the aggregate class damages.  Dkt. 176.

In 2011, following fact and expert discovery, the Court granted the classes' requests to

accelerate the principal of all class bonds that had not yet matured.  Dkt. 204.  The Court then

entered new judgments for the classes.  Dkt. 209.  Argentina appealed.  The Second Circuit

affirmed the order of acceleration, but vacated the judgments, finding the evidence in support of

the damages calculation still was not sufficient.  The Second Circuit instructed the Court to hold

an evidentiary hearing to determine the amount of class bonds actually held continuously, taking

into account secondary-market trading.  Dkt. 212 ("*Seijas II*").

On remand, the Plaintiffs moved to modify the class certification order to remove the

"continuous holder" requirement, which had proven to be an obstacle to class-wide judgements

and potential recovery, rather than a way for still-unpaid class members to obtain some

meaningful relief.  Dkt. 215-216.  The Court agreed and granted the order modifying the class

definition to redefine the classes as all holders of the class bonds.  Dkt. 224.  Argentina appealed

from that order and, in August 2015, the Second Circuit vacated the modification order and

instructed the Court to hold an evidentiary hearing with respect to damages.  Dkt. 258 ("*Seijas*

*III*").

Following remand, the parties once again engaged in fact discovery, including letters

rogatory issued to foreign institutions.  The Court also ordered the parties to publish a request

that class members submit Proofs of Claim to be used as evidence to support an estimate of class-wide damages.  Plaintiffs also retained an expert, Scott Hakala, to prepare a revised damages estimate.  Scullion Decl., ¶ 3.

      **E.**       **Argentina's February 2016 Settlement Proposal and Lifting of the Pari Passu Injunctions**

While the classes were in the midst of gathering evidence concerning damages, Argentina elected a new government.  The new government announced an offer to buy-out all bondholders. Bondholders that had pari passu injunctions could tender their bonds in exchange for payment of 70% of their claim value (72.5% if they tendered during the "early bird" period).  Bondholders that did not yet have pari passu injunctions were offered 150% of the principal amount of their bonds.  The offers were contingent on, among other things, the Court vacating the existing pari passu injunctions.  Scullion Decl., ¶ 4.

The classes objected to Argentina's offer in multiple ways and on multiple grounds, including because it treated similarly situated bondholders (i.e., those with pari passu rights) differently based solely on whether, as a procedural matter, the holders had injunctions in place in their particular lawsuits.  The classes also noted that the public nature of Argentina's offer to all bondholders violated the rules prohibiting direct offers of settlement to members of certified classes.  *E.g.*, *NML v. Argentina*, 08-cv-6978, Dkt. 883 & 884 (Plaintiff Classes Mtn. to Intervene) at n. 4.

Despite the arguments of the classes and many other bondholders, the Court granted Argentina's motion to lift the pari passu injunctions.  *NML*, Dkt. 912.  The Second Circuit affirmed that decision.  *NML*, Dkt. 928.

      **F.**       **Negotiation and Settlement-in-Principle**

After the order vacating the pari passu injunctions became final and Argentina had returned to the world credit markets, Plaintiffs, through Class Counsel, again sought to negotiate a settlement with Argentina.  Through arm's-length negotiations, including consultation with Special Master Pollack, the Plaintiffs and Argentina reached a settlement-in-principle on May 6, 2016.  The essential terms of that agreement-in-principle were that Class Members would be entitled to a settlement payment equal to 150% of their outstanding principal Class Bond holdings, less a pro rata share of class counsel fees and expenses (to be approved by the Court), and that Argentina would pay up to an additional $40,000 towards the actual costs of providing notice of the settlement and for claims processing.  Scullion Decl., ¶ 5.

As initially agreed, the proposed settlement was to be an "opt-in" settlement such that Class Members could choose to continue suing Argentina individually if they thought they could obtain a better recovery.  However, the parties ultimately agreed on a class-wide structure for the settlement instead, because the "opt-in" format would have left class members exposed to an unacceptable risk of "free riding."  Scullion Decl., ¶ 6.

Specifically, the parties could not agree on a mechanism that would prevent class members who did not "opt in" to the class settlement from settling directly with Argentina after the class settlement and, thereby, avoid their pro rata share of class counsel fees and expenses for any settlement amount up to the 150% of principle figure.  If class members who did not opt in were able to do so, they would effectively "free ride" on the class members who did opt in to the settlement.  Thus, the parties ultimately agreed to a class-wide settlement structure under which 1) Class Members will have ample opportunity to submit a claim for the 150% of principal payment; 2) all such Class Members will bear a pro rata share of the class counsel fees and expenses approved by the Court (to be paid from the settlement payment itself);  and 3)  final

6

judgment dismissing all claims with prejudice will be entered as to all Class Members who have

not previously opted out.  Scullion Decl., ¶ 7.

## II.    THE COURT SHOULD PRELIMINARILY APPROVE THE SETTLEMENT AGREEMENT

### A.    Legal Standard

"Preliminary approval of a class action settlement proposal 'is at most a determination

that there is what might be termed 'probable cause' to submit the [settlement] proposal to class

members and hold a full-scale hearing as to its fairness.'" *Authors Guild v. Google, Inc.*, 2009

WL 4434586 at *1 (S.D.N.Y. 2009) (quoting *In re Traffic Executive Assoc.,* 627 F.2d 631, 634

(2d Cir. 1980)).  The Court must decide whether the settlement is fair, reasonable, and

adequate.  *Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982).  Preliminary approval is

appropriate where, on the face of the settlement, "there are no grounds to doubt its fairness and

no other obvious deficiencies (such as unduly preferential treatment of class representatives . . .

or excessive compensation for attorneys), and where the settlement appears to fall within the

range of possible approval." *In re Herald, Primeo, and Thema Sec. Litig.*, 2011 WL 4351492 at

*4 (S.D.N.Y. 2011) (citing Manual for Complex Litig. § 30.41).

### B.    The Proposed Settlement is Fair, Reasonable and Adequate Under the Circumstances

Where, as here, a settlement is reached by experienced counsel that have engaged in a

non-collusive, arm's-length process, the compromise is entitled to a strong, initial presumption

of fairness. *Van Oss v. New York*, No. 10-Civ-7525-SAS, 2012 WL 2550959 at *1 (S.D.N.Y.

July 2, 2012).  Thus, preliminary approval is granted when a proposed settlement resulting

from such a process "has no obvious deficiencies, does not improperly grant preferential

treatment to class representatives or segments of the class and falls within the range of possible

approval, preliminary approval is granted." *In re Initial Public Offering Sec. Litig.*, 226 F.R.D. 186, 191 (S.D.N.Y. 2005) ("*IPO*").

As set forth above, the proposed settlement was arrived at through a non-collusive, arm's-length process.  To be sure, the settlement is a compromise—as all settlements are—and does not afford the classes all the relief they had sought to obtain in these actions.  But the proposed settlement does provide the best opportunity for compensation to the classes after well-over a decade of stonewalling by prior Argentine regimes.  And, notably, because they are members of classes that filed the lawsuits in 2004, all class members will be able to secure compensation at 150% of outstanding principal without the risk that non-class holders have faced of Argentina arguing that the claims are purportedly  barred by the statute of limitations. Moreover,  the proposed settlement avoids the considerable risk class members otherwise face of being unable to collect on any judgment the classes might obtain and unable to use "pari passu" clauses to force Argentina to the table (given the rulings of this Court and the Second Circuit lifting the pari passu injunctions, as well as Argentina's arguments that at least certain classes have no pari passu rights at all).

   1.   *Non-Collusiveness*

The proposed settlement plainly is the result of non-collusive discussions.  *IPO*, 226 F.R.D. at 191.

As explained above, these class actions have been litigated for nearly twelve years. The parties were fully apprised of the strengths and weaknesses of their respective claims and defenses and the collectability of any judgments.  In addition to the discovery taken by both sides, the difficult legal issues had been litigated and laid out in multiple proceedings both in these cases and in other, similar cases pending before this Court.

Moreover, the Plaintiffs agreed to settle with Argentina only after arduous efforts to secure a better settlement offer from Argentina by, for example, seeking pari passu injunctions for the classes, moving to intervene to argue against lifting the pari passu injunctions in other cases, and arguing in this Court and the Second Circuit that Argentina's settlement offers unfairly treated similarly situated holders differently.  Class counsel also engaged in multiple rounds of negotiations with counsel for Argentina to arrive at a settlement structure that best protects class members against unfair free-riding.

2.      *No Preferential Treatment*

The proposed settlement does not improperly grant preferential treatment to any class representatives.  Nor does it prefer certain segments of the classes over others.  The settlement benefits are available across the class without preference or segregation for the class representatives or any other class member.

3.      *The Settlement Is Within the Range of Possible Final Approval*

Preliminary approval also is appropriate here because the settlement plainly is one that could be granted final approval under Rule 23.

The settlement will provide payments to class members that have gone unpaid since 2001, including recognition of principal amounts that, in other circumstances, Argentina claims it can ignore based on the statute of limitations.  And, in providing payments now, it avoids the substantial risk that any judgment obtained by the classes would be for naught and remain unpaid and uncollectible, as has largely been the case for judgments obtained by other non-class members.  In short, the settlement, while not as great as Plaintiffs would have liked, does provide real, immediate, and concrete benefits to the class members.

Further, the Agreement provides for an effective plan of notice that should be approved. The "yardstick against which we measure" the sufficiency of notice to class members of a proposed settlement "is one of reasonableness."  *In re Bank of Am. Corp. Sec., Derivative, and Emp. Ret. Income Sec. Act (ERISA) Litig.*, 772 F.3d 125, 132 (2d Cir. 2014).  Here, the proposed settlement provides that Argentina will pay for the costs of notice to the classes and notice will be provided in at least three ways:  (1) by publication through Businesswire (in English and in Spanish, as has been done previously in these cases), (2) by sending the notice to brokerage institutions on a proprietary list maintained for such purpose by Gilardi & Co. (a reputable class action administration firm), and (3) submission of the notice to DTCC and Euroclear for distribution through their corporate action systems, i.e. the notice systems commonly used to provide bondholders of proposals and deadlines affecting their holdings.  In addition, class counsel will post the proposed settlement, the complaints, this Court's order of preliminary approval (if granted), and relevant settlement forms on a public website to be created specifically for this purpose.  Such notice will "fairly apprise the … members of the class of the terms of the proposed settlement," as well apprise them of (1) their opportunity to file any objections and (2) the fact that their claims will be released and barred if the settlement is approved and effectuated  *Nat'l Super Spuds, Inc. v. N.Y. Mercantile Exchange*, 660 F.2d 9, 20-21 (2d Cir. 1981).  The proposed notice explains the settlement benefits, class members' option to object, and will allow class members to go to the website to view the language of the proposed release verbatim.  "*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 116 (2d Cir. 2005) (due process is satisfied where class members are allowed to review actual words of the settlement and proposed releases).

Finally, in light of class members' prior, extensive opportunities to opt out or otherwise pursue their own claims (or sell their bonds in the market) and given the serious potential for any new opt outs now to free-ride on other class members and the benefits of having been a class member all this time (e.g., the tolling of the limitations period), the Plaintiffs respectfully submit that no additional opt-out period should be permitted under Ruler 23(e)(4). Again, the Plaintiffs sought to find a means to structure the settlement as an "opt in" settlement that would leave class members free to file their own claims against Argentina if they wanted to undertake the risks of trying to get more than the 150% on their own. However, because Argentina intends to keep the Public Offer open to all eligible bondholders indefinitely, the parties were unable to find a reasonable means to prevent opt outs from simply waiting a few months or even a year after this settlement to then take the 150% offer directly from Argentina and avoid paying their fare share of any class counsel fees and expenses. Such potential free-riding is inherently unfair, especially when many class members clearly have benefitted from being members of the class because the applicable statute of limitations has been tolled, such that Argentina would have a harder time arguing (as it has elsewhere) that bond with pre-2010 maturities or acceleration dates are ineligible to participate in the Public Offer.

If the Court is nonetheless inclined to permit an additional opt-out round, Plaintiffs respectfully request the opportunity to be heard more fully on the issue, including on potential mechanics the Court might order to minimize or avoid the risk of free-riding.

## C.     The Proposed Settlement Obviates Any Need to Conduct an Evidentiary Hearing on Class Damages

In August 2015, the Second Circuit vacated this Court's order modifying the class certification from classes of "continuous holders" to classes of, simply, all "holders." *Seijas III*, 797 F.3d at 215. The Second Circuit instructed this Court that, with respect to any damages

judgment in these actions, the Court had to follow the Second Circuit's instructions in *Seijas II*

by conducting an evidentiary hearing to determine classwide damages.  This process would

include presentation of evidence as to the volume of class bonds continuously held, as opposed

to just being traded in the secondary market.  *Id.* at 217-18.

The Court and the parties dutifully adhered to the Second Circuit's instructions and

commenced party discovery, non-party discovery, and a Proof of Claims process to prepare for

an evidentiary hearing on class damages.  However, in the middle of those preparations,

Argentina elected its new government and commenced an effort to settle these and all other

outstanding lawsuits.

The Second Circuit's opinion directed to the conduct of the litigation did not preclude

the parties from compromising and settling their claims instead.  Because the parties have

agreed to settle and compromise the class claims on agreed terms, no "damages" will be

assessed against Argentina.  Rather, Argentina will pay the agreed settlement compensation and

the class claims will be dismissed with prejudice.  No question of  actual damages  is present for

the Court to decide.  And proceeding with preparations for and conduct of such a hearing

would, in fact be detrimental to the classes as it would, at a minimum, add class counsel

expenses to be deducted from the settlement amounts,  even though the classes obtain no benefit

from such a damages hearing in light of the settlement.

In light of the proposed settlement, the class Plaintiffs and Argentina agree that no

damages hearing is needed.

## CONCLUSION

For all the reasons stated herein, the proposed Settlement should be granted preliminary

approval and the Court should approve the proposed Notice Plan and form of Notice to the

classes of the proposed settlement and their rights to object and/or obtain payment under the

settlement.

Dated:      New York, New York
            May 23, 2016

                              By: /s/ Jennifer R. Scullion

                                  Jennifer R. Scullion
                                  PROSKAUER ROSE LLP
                                  Eleven Times Square
                                  New York, NY 10036
                                  (212) 969-3000
                                  jscullion@proskauer.com

                                  Saul Roffe
                                  Law Offices of Saul Roffe, Esq.
                                  52 Homestead Circle
                                  Marlboro, NJ  07746
                                  (732) 375-9220
                                  sroffe@gmail.com

                                  Michael Diaz, Jr.
                                  Marta Colomar-Garcia
                                  DIAZ REUS & TARG LLP
                                  100 S.E. 2nd Street, Suite 3400
                                  Miami, FL 33131
                                  (305) 375-9220
                                  mdiaz@diazreus.com
                                  mcolomar@diazreus.com
                                  *Co-Lead Counsel for Plaintiffs*

13